UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

ZADEK ORGIAS,

                Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-19 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 31, 2017, Zadek Orgias pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Zadek Orgias is hereby sentenced to 70 months of incarceration, 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Zadek Orgias ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 31, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now forty-four years old, was born in Brooklyn, New York on May 15, 1974. Presentence Investigation Report ("PSR") ¶ 74, ECF No. 487. Defendant is the only child born to the consensual union of Abdullah (last name unknown) and Grace Orgias. *Id.* His father resides in Fayetteville, North Carolina, and is employed overseeing the plumbing layout in new building construction. *Id.* His mother resides in Atlanta, Georgia, and works as a travel agent. *Id.* The parents are aware of Defendant's arrest and conviction, and they remain supportive of him. *Id.* Defendant has a maternal half-sister, Aisha Hinds, who resides in Woodland Hills, California. *Id.* ¶ 76. Defendant also has two paternal half-siblings, Aisha and Michael (last

names unknown), who both reside in Atlanta. *Id.* The siblings are aware of Defendant's arrest and conviction, and they remain supportive of him. *Id.*

Defendant advised Probation that he was primarily raised by his mother and his maternal half-sister's father, Mark Hinds, in a middle-income household. *Id.* ¶ 78. He had no contact with his biological father until he was in his thirties. *Id.* ¶ 79. He noted that he would call Mr. Hinds "dad," and Mr. Hinds treated him as his son "for the most part." *Id.* ¶ 78. Defendant recalled that Mr. Hinds physically and verbally abused his mother several times per month. *Id.* In addition, Mr. Hinds physically abused Defendant and his sister, and they were often beaten over "small things," like leaving the refrigerator open. *Id.* Mr. Hinds would beat Defendant with whatever items he could get his hands on, including belts. *Id.* Defendant noted that the abuse occurred regularly, and he was often bruised as a result of the beatings. *Id.* Defendant's mother and Mr. Hinds separated in 2001, and Mr. Hinds died from a heart condition at age 57, in 2013. *Id.*

Defendant has primarily resided in Brooklyn. *Id.* ¶ 80. He resided in Grenada, West Indies, with a maternal aunt from 1980 to 1981, and 1987 to 1988. *Id.* Defendant noted that his mother sent him to live with aunt because the educational "structure" was better in Grenada. *Id.* From 1995 to 1997, Defendant resided in Largo, Florida. *Id.* Defendant recalled that his mother had relocated the family to Florida. *Id.* He resumed living in Brooklyn, New York, from 1998 to the present. *Id.*

In 2011, Defendant became romantically involved with Abbecha Aaron. *Id.* ¶ 81. Ms. Aaron is a homemaker. *Id.* They have one child, Zadek Orgias, Jr. (age four at the time of the PSR), and Ms. Aaron has an additional child from a previous relationship. *Id.* Defendant has resided with Ms. Aaron and the two children since 2013. *Id.* ¶ 84.

3

Although he shows no employment for the years 2010 through 2017, Defendant states he has been the primary supporter of Ms. Aaron and the children. *Id.* ¶ 82. There is no formal child support order from the court for the child. *Id.* At the time of the PSR, Ms. Aaron was searching for employment. *Id.* She had last worked as a cashier at a restaurant for a few months. *Id.* Ms. Aaron informed Probation that if Defendant were incarcerated, she would not be able to afford to rent the address of record on her own, and she would have to move in with her mother. *Id.* The move would also cause her other child to have to change schools. *Id.*

In an interview with Probation, Ms. Aaron described Defendant as a "good person and great father." *Id.* ¶ 83. She speculated that his motivation for the instant crime was possibly financial. *Id.* Defendant's mother described him as "very loving, kind, gentle, and giving," and added that he had "found God" since his arrest. *Id.* ¶ 75. Ms. Hinds, Defendant's sister, also described him as a "good listener, and genuine friend." *Id.* ¶ 77.

Defendant attended the ninth through the eleventh grades at Erasmus Hall High School in Brooklyn from September 1988 to February 1991. *Id.* ¶ 97. Defendant withdrew from this school to attend an unrecalled high school in Florida, from which he earned his high school diploma. *Id.* Defendant advised Probation that he attended a single semester at Hillsborough Community College in Tampa, Florida, in 1996. *Id.* ¶ 96. Defendant withdrew from school because he was not "cut out" for it. *Id.* Notably, the verification response from the school indicates that Defendant completed an application for admission in February 1997, and the school accepted his application. *Id.* However, Defendant never enrolled in the school. *Id.*

Defendant was shot in the abdomen in his high school cafeteria in 1990. *Id.* ¶ 86. He advised that he was shot as part of a "random shooting." *Id.* Defendant was hospitalized for one week, and he underwent surgery to have his abdomen repaired. *Id.* The doctors were unable to

4

remove the bullet, which is lodged in Defendant's kidney. *Id.* Defendant initially experienced pain, but he noted it is now only "intermittent." *Id.* He was given Morphine for pain at the hospital, and he was then given prescription painkillers after his release. *Id.* Defendant later sued the school, and he was awarded $200,000. *Id.*

In 2004, Defendant was shot again while at a corner store in Brooklyn. *Id.* ¶ 87. Defendant noted that he was shot because of a "mistaken identity." *Id.* He was struck on the left side of his body by several bullets. *Id.* Hospital staff inserted bolts in his femur and arm to keep them together. *Id.* Defendant is now unable to run, and he is unable to walk for long distances because of this injury. *Id.* He added that standing for extended periods of time can also hurt. *Id.* Defendant is also unable to rotate his left arm, as doctors had to shave the bone. *Id.* He advised that he was originally left-handed, but he has learned to do everything with his right hand with the assistance of physical therapy. *Id.* Defendant estimated that it took him approximately three years to be able to function fully with his right hand, and he continues to experience pain from his injuries, which he treats with Tylenol. *Id.*

Defendant advised Probation that he is mentally healthy, and he has not had any mental health treatment. *Id.* ¶ 89. From 2004 to 2011, Defendant reportedly had a gambling problem. *Id.* Defendant explained that he would go to a casino one time per month during that period, and he would gamble $40 to $80 per trip. *Id.* He advised that Ms. Aaron told him that the gambling was a "waste of money," and he ceased gambling through "self-rehabilitation." *Id.* Defendant has not gambled since 2011. *Id.*

Defendant noted that he consumes alcohol three times per year. *Id.* ¶ 90. Defendant first smoked marijuana at age sixteen, and he last smoked it prior to his instant arrest. *Id.* ¶ 91. From age twenty up until his instant arrest, Defendant smoked at least three marijuana cigarettes per

day, and he spent $20 per day on it. *Id.* Defendant stated that he paid for marijuana out of his earnings. *Id.* He admitted to Probation that he had a problem with marijuana. *Id.* Defendant stated that he used cocaine on approximately three occasions in 2008. *Id.* ¶ 92. He noted that he did not like cocaine, and ceased using it. *Id.* Defendant advised that he was prescribed prescription painkillers after he was shot, and he used them for a few months, as prescribed. *Id.* He ceased using them after a few months. *Id.* Defendant advised that he attended Narcotic's Anonymous meetings while he was residing in Florida. *Id.* ¶ 93. He recalled that he began to smoke marijuana again, and he stopped attending the meetings. *Id.* A urinalysis administered by the Probation Department following the presentence interview was negative for the presence of illicit substances. *Id.* ¶ 94. Notably, Defendant is also subject to random urine tests with Pretrial Services, and at the time of the PSR, he continually tested negative for the presence of illicit substances. *Id.*

At the time of the PSR, Defendant was employed as a recruiter at ASA College in New York. *Id.* ¶ 100. Prior to that job, Defendant told Probation he had held various jobs in Tampa and New York including working at a car wash, restaurants, a retirement home, an office cleaning company, and a barber shop. *Id.* ¶ 101. He advised Probation that he was unemployed after he was shot in 2004, and he was financially supported by his mother and through SSI benefits, which began in approximately 2005. *Id.* Notably, Defendant held no formal employment between 2010 and February 2017. *Id.* Defendant also used the $200,000 settlement he received from the school shooting to support himself. *Id.*

Defendant has an extensive criminal history, with ten prior convictions including attempted assault in 1993 (where Defendant stabbed the victim in the back four times), fleeing and eluding police officers, possession of marijuana, petty theft and larceny, driving with a

6

suspended license, and criminal possession of a weapon. *Id.* ¶¶ 55-64. Defendant's prior criminal convictions result in a criminal history score of four under the Guidelines, establishing a criminal history category of III. *Id.* ¶¶ 61-66.

Defendant was an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶ 38. The OGC (or the "enterprise") was a gang comprised primarily of individuals residing in and around the East Flatbush neighborhood of Brooklyn, New York, and was a "set," or subgroup, of the Crips street gang. *Id.* ¶ 5. Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 7.

Defendant was a street level narcotics distributor and sold cocaine base to various individuals. *Id.* ¶ 38. Defendant is accountable for at least 280 grams of cocaine base. *Id.*

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the OGC. More generally, the Court's sentence sends a message to others that a life of crime carries a reward of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, *id.*; not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C); and a special assessment of $100.00, 18 U.S.C. § 3013. Under the plea agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 6-13.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty for at least 280 grams but less than 840 grams of cocaine base. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(5) (Nov. 2016) ("USSG").

Defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree that Defendant should receive this three-point reduction for acceptance of responsibility.

Defendant's Plea Agreement contemplated a two-level reduction for a global resolution under USSG § 5K2.0 if: a) eighteen covered co-defendants pled guilty on or before May 17, 2017, and b) those pleas are accepted by a District Court Judge at the time of allocution or, if the plea was taken by a Magistrate Judge, on or before May 31, 2017. Plea Agreement ¶¶ 2, 15. Not all of the eighteen covered co-defendants pled guilty by the deadlines specified in the Plea Agreement, though all defendants in this case have now pled guilty. The Plea Agreement provides the Government "may also elect not to recommend a two-level reduction under the Guidelines for a global disposition, as contemplated in Paragraph 2" of the Plea Agreement. *Id.* ¶ 15. However, the Plea Agreement further provides that if eight specified co-defendants satisfied the conditions of paragraph 15, "the Office agrees to recommend a one-level reduction under the Guidelines for a global disposition." *Id.*

In the PSR, which was filed in November 2017, Probation stated that while all the covered defendants had not pled guilty by the deadlines in the Plea Agreement, "the Government has agreed to a 1-level reduction in the guideline range, per Policy Statement 5K2.0." PSR ¶

9

125. However, in its most recent submission, the Government has made clear it now stands by a two-level reduction for global resolution. Gov't Sentencing Mem. at 3.

With reductions for acceptance of responsibility, Defendant's total offense level is twenty-five with a two-level global resolution reduction.

Given a total offense level of twenty-five and a criminal history category of three, the Guidelines suggest a term of imprisonment of between seventy to eighty-seven months. USSG ch. 5, pt. A. Defendant may also be sentenced to a term of supervised release of three years, *id.* § 5D1.2(a)(2)[1]; a fine of between $10,000.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(3) & (c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

The U.S. Probation Department recommends a below-Guidelines sentence of sixty months of imprisonment followed by three years of supervised release with special conditions. *See* Probation Sentence Recommendation at 1, ECF No. 487-1. Probation notes that if a one-level reduction applied for a global resolution, Defendant's offense level would be twenty-six, with a guidelines imprisonment range of seventy-eight to ninety-seven months. *Id.* at 2. Probation notes the seriousness of Defendant's conduct and the fact he has ten prior convictions for which he received lenient sentences. *Id.* Probation also notes that unlike most of his co-defendants, Defendant was not carrying or using firearms in connections with the instant offense. *Id.* He has also been successful in obtaining gainful employment while out on bond and has continued to test negative for illicit substances despite his history of substance abuse. *Id.*

---

[1] The Guidelines suggest a supervised release term of one to three years. *See* USSG § 5D1.2(a)(2). However, the statutory minimum is three years. 21 U.S.C. § 841(b)(1)(C).

The Defense seeks a significantly below Guidelines sentence of five years probation, or in the alternative, a sentence of one-year of electronically monitored home confinement or an intermittent sentence of six months of weekends in custody. *Id.* at 3. In support of this recommendation, Defendant cites his relationship with his girlfriend and four-year old son, his remorse and acceptance of responsibility, his nonviolent nature and minimal role, the fact that he has remained gainfully employed while on bond and continued to test negative during drug tests, and his strong ties to his family, community, and church. *Id.* at 6, 9-13, 16. Indeed, the Defendant's sentencing memorandum contains over thirty letters from friends and family in support of Defendant. *See id.*, Exs. 1-31.

The Government advocates that an offense level of twenty-five should apply, leading to an advisory Guidelines range of seventy to eighty-seven months. Gov't Sentencing Mem. at 1, 3, ECF No. 552. The Government notes that while the defendants enumerated in the Plea Agreement did not plead by the deadline, they have all now pled, and the Government requests that the two-level global resolution reduction should apply. *Id.* at 3. The Government requests the Court impose a sentence within the range of seventy to eighty-seven months. *Id.* at 1.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing, beyond a global resolution reduction under USSG § 5K2.0 as discussed *supra*.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will continue to craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 70 months of incarceration, to be followed by 3 years of supervised release, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

12

Dated: June 28, 2018
     Brooklyn, New York